# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES STEEL CORPORATION and U.S. STEEL MINING COMPANY, LLC,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | 2:04-CV-0065-VEH |
| **JO ANNE B. BARNHART, Commissioner of Social Security,** | ) ) ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION[1]

The court has before it the remaining counts in Defendants' Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment ("Renewed Motion") (doc. 52) filed on August 5, 2005. Only counts V and VII are still at issue. The motion was deemed submitted without oral argument upon completion of the briefing (doc. 90) on July 24, 2006.

---

[1]This is the second Memorandum of Decision on summary judgment entered in this case. The first one was entered on June 20, 2996. (See generally doc. 84). As discussed below in the court's procedural history section, the initial Memorandum of Decision resulted in summary judgment in favor of Defendant as to counts II, III, VI, VIII, IX, XII, XIV, XV, XVI, and XVII of Plaintiffs' Second Amended Complaint. (doc. 85). In Plaintiffs' Second Amended Complaint, they withdrew count I. (doc. 48 at 4).

## I. Procedural History

Plaintiffs United States Steel Corporation ("USS") and United States Steel Mining Company, LLC ("USSM") commenced this action by filing a complaint in this court on January 12, 2004, alleging that defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration (the "SSA"), violated the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. 9701 et seq. ("Coal Act"), by assigning miners to inappropriate signatory operators. (See doc. 1). Plaintiffs sought leave to amend their complaint twice, which the court granted, and Plaintiffs filed their First Amended Complaint (doc. 39) on November 10, 2004, and their Second Amended Complaint (doc. 48) on July 26, 2005.

The Trustees ("trustees") of the United Mine Workers of America ("UMWA") Combined Benefit Fund (the "Fund")filed a motion to intervene with respect to counts II and III and a brief in support thereof on August 9, 2005 (docs. 53 and 54). The court granted that motion on September 22, 2005 (doc. 61).

As mentioned above, on August 5, 2005, Defendant filed its Renewed Motion. (doc. 52). On October 21, 2005, the trustees filed a Motion for Summary Judgment as to Counts II and III (the only counts that affected their interests) (doc. 64), and on November 21, 2005, plaintiffs filed a Motion for Summary Judgment as to Counts II, III, VI, VIII, IX, XII, XIV, XV, XVI, and XVII (doc. 67). Plaintiffs also filed a

motion under Rule 56(f) of the Federal Rules of Civil Procedure to defer consideration of counts IV, V, and VII (doc. 67). The court granted the Rule 56(f) motion on May 11, 2006 (doc. 82).

On June 20, 2006, the court granted summary judgment in favor of defendant as to counts II, III, VI, VIII, IX, XII, XIV, XV, XVI, and XVII and in favor of the trustees' as to counts II and III (doc. 85). The court now addresses counts V and VII[2] after considering the parties' supplemental briefs (docs. 88 and 90) in addition to the other briefs and the record evidence.

## II. Standards for Evaluating Summary Judgment Motions and Converting Motions to Dismiss

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those

---

[2] After reviewing its records, the SSA found a relationship between Consolidation Coal Company and Pittsburgh Coal Company and has therefore withdrawn its assignment of Joseph Bozic, making its Renewed Motion moot with respect to count IV.

portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman, 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial

burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. Fitzpatrick,

2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Although defendant's Renewed Motion is styled as a Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment, the court treated it as a motion for summary judgment because it considered evidence outside the pleadings. Fed. R. Civ. P. 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

### III. Relevant Undisputed Facts[3]

Counts V and VII relate to the SSA's assignment of Max Cadez and William Cotton, respectively. The SSA upheld the assignment regarding Mr. Cadez because it found the Utah Power and Light was out of business and was not related to any in-business company. AR Tab 17 at 4749. Similarly, the SSA upheld the assignment relating to Mr. Cotton because it concluded that Coalite was neither in business nor related to any company that is in business. AR Tab 54 at 4744.

After the SSA issued its final decisions concerning these miners, Plaintiff USSM submitted additional evidence and requested reconsideration. With respect to Mr. Cadez, Plaintiff USSM maintained that Utah Power was related to Pacificorp, which was still in business. AR Tab 56 at 4862. Concerning Mr. Cotton, Plaintiff USSM asserted that "Copalite was part of Brilliant Coal Company which purchased Great Northern Nekoosa Company which in turn purchased Georgia-Pacific." Id. at 4848. The SSA did not reopen the proceedings to consider this new evidence.

---

[3]Please refer to the court's prior Memorandum of Decision for an extensive factual recitation and discussion including the language and history of the Coal Act, the relevant SSA assignments and reassignments, and prior litigation between the parties. (See doc. 84).

### IV. Applicable Substantive Law and Analysis

Based upon the parties' most recent series of briefs,[4] Counts V and VII are the only remaining ones for the court to address on summary judgment.  Defendant's Renewed Motion, as amplified in its Reply in Support of Motion for Summary Judgment with Respect to Remaining Counts (doc. 90), maintains that (1) Plaintiffs' claim that the SSA applied the wrong criteria is not properly before the court because it is not included in their Complaint and, further, even if raised, the SSA's reliance on the lack of wage records (and lacking any contrary evidence) is reasonable, and (2) Plaintiffs' claim that the SSA improperly refused to open its review decision to consider additional evidence after it became final lacks merit.  (doc. 90 at 3).

The Coal Act explicitly states that the Social Security Commissioner's assignments are subject to review "by a court under this subsection."  26 U.S.C. § 9706(f)(5); Sigmon Coal Co., Inc. v. Apfel, 226 F.3d 291, 301 (4th Cir. 2000).  Final determinations by the Social Security Administration, such as the ones at issue here, are reviewed under the Administrative Procedure Act ("APA").  Sigmon Coal Co., Inc., 226 F.3d at 301; Lindsey Coal Mining Co. v. Chater, 90 F.3d 688, 691 (3d Cir.

---

[4]More specifically, the Commissioner "[b]ased on evidence found in its record showing a relationship between Consolidated Coal Company and Pittsburgh Coal Company, . . . withdr[e]w the assignments of Joseph Boric to USSM[,]" which mooted the summary judgment issues concerning IV and left counts V(Max Cadez) and VII (William Cotton) still ripe for summary judgment review.  (doc. 90 at 2 n.2).

1996). Under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court must also "hold unlawful and set aside agency action, findings, and conclusions found to be –"

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

Under the APA, a court reviews questions of law de novo. Bama Tomato Co. v. U.S. Dep't of Agriculture, 112 F.3d 1542, 1546 (11th Cir. 1997); Pollgreen v. Morris, 770 F.2d 1536, 1544 (11th Cir. 1985). An agency's factual findings must be supported by "substantial evidence," which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bama Tomato

Co., 112 F.3d at 1546; see also Keeton v. Dep't of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).  Since the challenged decisions in these two remaining counts involve questions of law, the court reviews them de novo.

### A. Plaintiffs' Challenge Relating to the Criteria Used by the SSA

In making a determination as to whether a company was in business, the SSA relied upon a review of its records that showed that a particular company had not filed wage reports for two years.  Plaintiffs maintain that this standard for determining whether a company is in business is inconsistent with Lindsey, 90 F.3d at 692-93.  The SSA attacks Plaintiffs' argument both procedurally and substantively.  Procedurally, the SSA points out that while Plaintiffs allege that the SSA's review upholding Plaintiffs' assignments was arbitrary and capricious because they should have been assigned to the signatories related to companies still in business, Plaintiffs' Second Amended Complaint makes no express allegation that the SSA used the wrong standard in determining whether the relevant companies were out of business. (doc. 48 ¶¶ 44, 54).

####     1.    Procedurally, Plaintiffs' criteria challenge is not squarely before the court.

Several Eleventh Circuit cases embrace the principle that a plaintiff "may not amend [a] complaint in a brief opposing summary judgment." Gilmore v. Gates, 382 F.3d 1312, 1315 (11th Cir. 2004); see, e.g., Hurlbert v. St. Mary's Health Care

System, Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) ("Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment."); Chavis v. Clayton County School Dist., 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) ("Chavis advanced this contention in his brief . . . in response to the defendants' motion for summary judgment[, but] Chavis did not seek to amend his complaint[.]"); Marsh v. Butler County, Ala., 268 F.3d 1014, 1035 n.15 (11th Cir. 2001) ( en banc) (affirming dismissal of complaint where plaintiffs did not seek to amend the complaint in district court and did not argue on appeal that they should have been allowed to do so); see also Car Carriers, Inc. v. Ford Motor Co.,745 F.2d 1101, 1107 (7th Cir. 1984) ("Nonetheless, in this appeal we limit our review, as we must, to the well-pleaded allegations of the complaint.").

Moreover, "[a]t the summary judgment stage, the proper procedure is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." Gilmore, 382 F.3d at 1315. Plaintiffs have not sought to amend their Second Amended Complaint to include allegations that the SSA used the incorrect standard when evaluating whether a company was still in business. Against this backdrop, the court agrees with the SSA that the alleged improper standard for doing business claim is not properly before the court.

### 2. Alternatively, and substantively, Plaintiffs' criteria challenge lacks merit.

Alternatively, and from a substantive point, the court agrees with the SSA that its interpretation of the doing business standard is not inconsistent with the <u>Lindsey</u> decision and is correct as reviewed on a <u>de novo</u> basis.

In <u>Lindsey</u>, the Third Circuit determined that the statutory definition of "in business" is broad, and that it included an entity that not only "conducts" business activity in the conventional sense, but also which "derives revenue" from business activity. 90 F.3d at 692. The plaintiff company in <u>Lindsey</u>, who had characterized itself as a "liquidating trust" had actually "generated substantial income for leasing and sales ventures, the same activities it conducted for its last twenty-two years as a corporation." <u>Id.</u> As a result, the Third Circuit found the SSA's decision to be consistent with its policy statements relating to the Coal Act and upheld the SSA's decision to make assignments to the plaintiff corporation. <u>Id.</u> at 693.

The <u>Lindsey</u> court never addressed whether "absent evidence to the contrary," the SSA can reasonably find that a company is not in business if it has not filed any wage reports in the last two years. Nor did the <u>Lindsey</u> court require that SSA must conduct an independent investigation of each signatory to determine whether a company is actively deriving revenues through various investments and/or whether it has merged with other firms. As explained by Congress: "As long as the

12

determination is based on accurate data and that reasonable inferences are drawn under the circumstances, the determination made by the [Commissioner] is intended to prevail." 138 Cong. Rec. S17605 (Oct. 8, 1992). Therefore, in light of no evidence to the contrary, the court concludes that the SSA reasonably relied upon the wage reports and other related information received from the Fund to reach its decision that the subject companies were no longer in business. Accordingly, Plaintiffs' opposition to summary judgment based upon this challenge fails.

### B.   Plaintiffs' Challenge Relating to Their Request to the SSA for Reconsideration Based Upon New Evidence

Plaintiffs' second challenge based upon their request to the SSA to reconsider its decision relates to new evidence pertaining to Utah Power and Copalite. The SSA's decision against reopening its prior proceedings is <u>de novo</u> correct, and this challenge by Plaintiffs on summary judgment similarly fails.

The Coal Act statutory and regulatory structure establishes a specific review process for parties to follow. For example, the SSA "shall conduct a review if the Commissioner finds that the operator provided evidence with the request constituting prima facie case of error." 26 U.S.C. § 9706(f)(1). Moreover, a party may request additional time to submit evidence during the review process and receive "an additional 90 days from the date of [its] request for review to submit such evidence." 20 C.F.R. § 422.605(d).

Also, in the absence of an assigned operator providing "evidence constituting a prima facie case of error," the SSA "will deny the request." 20 C.F.R. § 422.606(b). Additionally, the Coal Act does not provide for any reconsideration mechanism, and the SSA's decision on a request for review "shall be final." 26 U.S.C. § 9706(f)(4).

Furthermore, in USX Corp. v. Barnhart, 395 F.3d 161 (3d Cir. 2004), the Third Circuit affirmed the district court's rejection of a similar challenge based upon the SSA's refusal to reopen four (4) review decisions issued in 1998 and 1999. 395 F.3d at 172 n.6. In fact, Plaintiffs, in an earlier filing, fully acknowledged that, based upon the Third Circuit's decision in USX Corp., "[the] SSA is not obligated to reconsider its decision in light of the additional evidence." (doc. 68 at 41). Plaintiffs' final brief does not address this prior concession and Plaintiffs' efforts to otherwise convince the court that a reopening of the SSA review decisions that are the subject of Defendant's Renewed Motion are unpersuasive.

## V. Conclusion

In conclusion, no material issues of fact remain and Defendant is entitled to judgment as a matter of law on counts V and VII. Accordingly, Defendant's Renewed Motion is due to be granted. Additionally, as no pending claims remain, the case is due to be dismissed with prejudice. A separate order to this effect will be entered.

**DONE** and **ORDERED** this 1st day of September, 2006.

_/s/ V.E. Hopkins_
**VIRGINIA EMERSON HOPKINS**
United States District Judge
